UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE TOOMER, JAYA MARIE LITTLE, a minor through her guardian ad litem, DYLIN BARUSO,<br><br>Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Civil No.06cv0860 JAH (LSP)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 18]** |

Pending before the Court is Defendant's motion for summary judgment. The motion was heard before this Court on February 25, 2008. After hearing argument by counsel, and a thorough review of the pleadings and exhibits filed, the Court GRANTS Defendant's motion for summary judgment.

**BACKGROUND**

This case arises from the death of Navy Seaman Roderick Little. On the evening of November 18, 2003, Club Metro, a facility on the 32nd Street Naval Base in San Diego ("NBSD") was holding an event called "hip hop night." Little and a group of friends were at the club. Myron Thomas, a marine, and several friends were also at the club. A fight broke out on the dance floor and was broken up by security personnel. At one point during the night, Thomas was asked to leave the club for carrying a drink on the dance floor, but later re-entered the club. After closing, an altercation occurred in the parking lot between the two groups. Military police officers intervened and instructed the groups

1  to leave the base.  Military security officers were assisting traffic exiting the base when they
2  heard a voice from inside a vehicle say "I'm going to do a 187."  Neither officer called to
3  report the incident, although one officer, at some point after the encounter, explained he
4  picked up the telephone at the guard booth with the intention of calling in the incident
5  when he heard shots.

6  After exiting NBSD, Little and his group proceeded to at the Del Taco on 28th and
7  Main Street.  After exiting NBSD, Thomas drove to an apartment, obtained a gun and
8  then proceeded to Del Taco.  He shot into the crowd at Del Taco and killed Little.

9  Marie Toomer, Little's mother and Jaya Marie Little, Little's minor daughter,
10 through her mother and guardian ad litem, Dylin Baruso, filed the pending action for
11 wrongful death on April 12, 2006, against the United States of America.  Defendant filed
12 an answer on August 25, 2006.

13 Defendant filed the pending motion for summary judgment (Doc. No. 18) on
14 January 22, 2008.  Plaintiff's filed an opposition (Doc. No. 24) on February 8, 2008, and
15 Defendant filed a reply on February 15, 2008.

### LEGAL STANDARD

17 Summary judgment is properly granted when "there is no genuine issue as to any
18 material fact and ... the moving party is entitled to judgment as a matter of law."
19 Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails
20 to make a showing sufficient to establish the existence of an element essential to that
21 party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.
22 v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the
23 initial burden of establishing an absence of a genuine issue of material fact.  <u>Celotex</u>, 477
24 U.S. at 323.  Where the party moving for summary judgment does not bear the burden
25 of proof at trial, it may show that no genuine issue of material fact exists by demonstrating
26 that "there is an absence of evidence to support the non-moving party's case."  <u>Id</u>. at 325.
27 The moving party is not required to produce evidence showing the absence of a genuine
28 issue of material fact, nor is it required to offer evidence negating the moving party's claim.

1  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v.
2  Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and
3  should, be granted so long as whatever is before the District Court demonstrates that the
4  standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497
5  U.S. at 885 (quoting Celotex, 477 U.S. at 323).

6       Once the moving party meets the requirements of Rule 56, the burden shifts to the
7  party resisting the motion, who "must set forth specific facts showing that there is a
8  genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
9  Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is
10 insufficient. See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991). A
11 material fact is one that is relevant to an element of a claim or defense and the existence
12 of which might affect the outcome of the suit. The materiality of a fact is thus determined
13 by the substantive law governing the claim or defense. Disputes over irrelevant or
14 unnecessary facts will not preclude a grant of summary judgment. T.W. Electrical Service,
15 Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(citing
16 Anderson, 477 U.S. at 248).

17      The court may not make credibility determinations, and inferences to be drawn
18 from the facts must be viewed in the light most favorable to the party opposing the
19 motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); see also
20 Matsushita, 475 U.S. at 587; Anderson, 477 U.S. at 255.

## DISCUSSION

22      Defendant argues it is entitled to judgment as a matter of law, because it owed no
23 duty to Little beyond what was done. Defendant also contends that even if it did owe a
24 duty, Plaintiffs cannot prove causation and the discretionary function doctrine bars
25 Plaintiffs from recovery.

26      Under the Federal Tort Claims Act "(FTCA)", the United States may be sued in a
27 tort action for actions caused by a government employee "if a private person would be
28 liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b). In California negligence actions, the plaintiff bears the burden of showing the "defendant owed the plaintiff a legal duty, the defendant breached the duty, and the breach was a proximate or legal cause of injuries suffered by the plaintiff." Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673 (1993).

Defendant argues it owes no duty to protect persons located outside of a military installation. Relying on California law regarding police personnel, Defendant argues the United States had no special relationship with Little and owed no legal duty to take any action beyond what was done.

Plaintiffs argue Defendant's reliance on cases involving state or local police is improper. Instead, Plaintiffs argue the United States may be held liable under a premises liability theory. Plaintiff argues a special relationship exists between a club owner and its patrons and other invitees. The relationship imposes a duty on Defendant and its employees to take affirmative and appropriate action to control the wrongful acts of third persons which threaten the patron.

**I. Proper Inquiry for Legal Duty**

Under the FTCA the United States is liable "in the same manner and to the same extent as a private individual under like circumstances. . ." 28 U.S.C. § 2674. The Supreme Court has interpreted this to mean "the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort." United States v. Olson, 546 U.S. 43, 44 - 45 (2005) (reversing Ninth Circuit precedent permitting courts to base a waiver simply upon a finding the local law would make a state or municipal entity liable.).

Olson involved an FTCA action against the Mine Safety and Health Administration alleging negligent mine inspectors caused a mine accident resulting in injuries to two workers. The Supreme Court rejected the Ninth Circuit's two premises regarding liability under the FTCA: (1) "where 'unique governmental functions' are at issue, the Act waives sovereign immunity if a state or municipal entity would be subject to liability under the law where the activity occurred" (internal quotations omitted); and (2) "federal mine

inspections being regulatory in nature are such 'unique governmental functions' since there is no private-sector analogue for mine inspections." <u>Olson</u> 546 U.S. at 45.

The Court determined the Ninth Circuit's first premise in <u>Olson</u> read something into the FTCA that is not there, namely that the Act waives sovereign immunity "under circumstances where the United States. . .if a state or municipal entity would be liable." <u>Id.</u> Relying on the discussions in <u>Indian Towing Co. v. United States</u>, 350 U.S. 61 (1955) and <u>Rayonier Inc. v. United States</u>, 352 U.S. 315 (1957), the Court noted that the Act requires a court to look to the state law liability of private entities, not public entities when assessing liability under the FTCA. The Court found the second premise too narrow. Pursuant to the holding in <u>Indian Towing</u>, the Court determined the words "'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." <u>Olson</u> 546 U.S. at 46 (emphasis in original).

Relying on the <u>Tekle ex rel. Tekle v. U.S.</u>, 437 F.3d 1088 (9th Cir. 2006), Plaintiffs argue only "private person" liability is relevant under the FTCA. In reply, Defendant argues Plaintiffs' position proceeds from a fundamental misreading of the <u>Tekle</u> decision. Defendant contends the amended opinion in <u>Tekle v. U.S.</u>, 511 F.3d 839, 850 (2007), withdrew majority support of the portion of the original opinion relying on <u>Olson</u> and thereby implicitly reaffirming the line of Ninth Circuit cases examining state law as it applies to state or municipal employees in FTCA cases involving unique governmental functions. During oral argument, Plaintiffs argued this matter does not deal with someone acting as a police officer, but is more closely related to a private person who operates a bar.

This Court recognizes there are certain functions performed by government actors that are purely governmental in nature and have no private person analogy. This is particularly true with certain law enforcement duties. The concurring opinion in <u>Teckle</u> puts courts on notice that those cases may require a different inquiry. This Court, however, need not make the determination in this case, as the actions taken by Defendant here are not unique government functions. The undisputed facts of this action demonstrate Little was a patron at Club Metro located on the NBSD and was killed after

leaving the club and the base. The closest private person analogy, as Plaintiff argues, is that of a private person who operates a bar or club on his land.

**II. Analysis**

Generally, there is no duty to protect an individual from the wrongful conduct of a third party. See Tarasoff v. Regents of University of California, 17 Cal.3d 425, 434 (1976). However, a duty may arise where a "special relationship" exists between the parties. See id.; Delgado v. Trax Bar & Grill, 36 Cal.4th 224, 235 (2005). California courts recognize a special relationship exists between business proprietors and their patrons. Id. Based upon the special relationship, a proprietor owes a patron a duty "to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." Id. (Citing Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 674 (1993). The scope of the duty to protect patrons from foreseeable third party crime "is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed." Ann M., 6 Cal.4th at 678. Other factors courts consider in determining the existence and scope of a duty are "the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm , the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." Id. at 675, n.5.

Here, there is no dispute that Little was a patron of the club. Accordingly, Defendant owed Little a duty to take reasonable steps to protect him from foreseeable harm from third parties. Defendants argue the duty did not extend to acts occurring off-base. Plaintiff argues the scope and extent of the duty extended to the harm that occurred off-base and asserts this duty required Defendant to have adequate security staff. Providing security or guards is a burdensome measure that requires a heightened foreseeability. See Delgado, 36 Cal.4th at 244. Accordingly, there must be evidence of

past similar criminal conduct. Defendant argues this requires evidence of an on-base verbal altercation escalating into an off-base violent incident. Defendant asserts there is no evidence that a verbal argument resulted in an off-base violent incident of any type. Plaintiff argues there was a history of fights at Club Metro of which at least 30 lead to arrests between 2001 and 2003 and therefore the fatal shooting of Little was foreseeable.[1]

The evidence demonstrates there were numerous previous violent incidents within Club Metro and it its parking lot some of which resulted in apprehension of the participants. See Baruso Decl. ¶¶ 2-3; Eglan Dec. ¶ 2; Rhodes Depo., Plas' Exh. 16 at 19: 11-20; Lopez Depo., Plas' Exh. 12 at 8:12-25 at 9:1-25; Otero Depo., Plas' Exh. 13 at 16:17-25, p. 17:1-14, p. 20:12-25, p. 21:1-25; Hargreaves Depo., Plas' Exh. 7 at 18-22. Del Taco, located near the base, was a know post-Club Metro hangout. Reporter's Transcript, Plas' Exh. 1 at 300; Otero Depo., at 76:10-13. There is no evidence of violent acts taking place off-base following "hip hop night" at Club Metro. In fact, there is testimony from Navy security officers that they never head of an on-base argument escalating into off-base violence. See Lopez Depo., Def's Exh. 2 at 68:25 - 69:5; Hargreaves Depo., Def's Exh. 4 at 100: 14-24. As such, the Court finds there is no evidence of past similar criminal incidents or other factors supporting foreseeability that would require Defendants to provide security to prevent violent acts off-base.

Plaintiffs also maintain the scope of the duty owed includes calling the police in response to a murder threat. This would entail a lesser burden than providing adequately trained security. However, the harm to a person off-base is not sufficiently foreseeable to extend the scope of the duty as requested by Plaintiffs.

According to the undisputed facts, there was an verbal altercation between Thomas'

---

[1] Plaintiffs further maintain there is other evidence in the form of incident reports of previous fights at Club Metro that were required to be kept for 50 years, but was never produced or was spoilated by NCIS. Plaintiffs ask the court to presume the evidence to be adverse to Defendant based upon the spoilation. Defendant maintains it did not fail to turn over and it did not destroy any evidence. Defendant contends it conducted a search based upon Plaintiffs' request for reports of violent incidents at Club Metro and did not locate any documents. Because there is no evidence of spoilation, a presumption in favor of Plaintiffs is not warranted. Additionally, the record does not reflect this matter was presented to and addressed by the Magistrate Judge during the discovery phase of this case.

and group of friends and Little and his group of friends in the parking lot of the club. Harbreaves Depo., Plas' Exh. 7 at 26.  Thomas was very angry and was restrained by a friend.  <u>See</u> Bernard Jones Testimony, Reporter's Transcript of Trial in <u>The People of the State of California v. Thomas</u>, Plas' Exh. 10 at 2468, 2469.  One of the officers reported lots of cursing, arguing and a mention to "take it off-base."  Hargreaves Depo. At 47:8-49:11.  The groups were told to leave and dispersed by Officers Anthony Hargreaves and Pedro Lopez.  After the altercation, traffic was moving toward the gate to exit the base.

Security officers Darrell Gordon and Juan Salazar were assigned to the gate to assist with the large amount of traffic leaving the base, because there was a large amount of auto and pedestrian traffic leaving the base after Club Metro closed.  <u>See</u> Salazar Depo., Def's Exh. 7 at 61:6-15.  The officers were not required to check identification of those leaving the base.  <u>See</u> Gordon Depo., Def's Exh. 6 at 28:5-29:4, 87:10-88:10.  Gordon testified that those leaving the based often yelled something at the officers.  <u>See</u> Gordon Depo. at 90:8-23.  During the departure of cars the night of the shooting, the officers heard someone from inside a dark vehicle say he was "going to do a 187."[2]  <u>See</u> Salazar Depo. at 27:14-16, 28:20-29:2; Gordon Depo. at 30:10-30:18.  Gordon attempted to speak to those in the car, but it passed quickly to exit the base and neither officer was able to take down the license number.  <u>See</u> Gordon Depo. at 33:9-17, 90:5-7; Salazar Depo. at 62:3-5.  Gordon observed the car turn left onto Harbor.  Gordon Depo., Plas' Exh. 5 at 35:12-16.  The encounter with the car containing the person who made the statement took no more than 20 seconds.  <u>See</u> Salazar Depo. at 61:24-62:2.

Based on the undisputed facts the Court finds the off-base shooting was not a foreseeable act.  There is a clear absence of any prior violent act off-base following an on-base altercation despite evidence of numerous on-base altercations.  The officers at the exit were unaware of the altercation that took place in the parking lot.  Also, in light of the many comments yelled at the officers by those exiting the base following the closure of Club Metro, the statement that someone was going "to do a 187" was at best a vague

---

[2] Gordon testified that the meaning of a 187 was to shoot someone.  Gordon Depo. at 30:19-24.

threat. Furthermore, there is no evidence of any weapon brandished or seen by the officers.

Additionally, it is questionable whether a call to the police would have protected against the violence that occurred in this case. Although the security officers saw the vehicle from which the vague threat was made, they did not obtain the license plate number and they did not know where the car was traveling. It is unclear whether the police would have been able to locate the car based upon the officers description.

Accordingly, the Court finds Defendant's duty to protect its patrons from third party crime did not extend to violent acts outside the base. Plaintiffs' claim is based upon the shooting of Little that occurred off-base. Because duty is a required element of Plaintiffs' negligence claim, the absence of any duty to protect Little from the off-base shooting is fatal to the FTCA claim. Therefore, Defendant is entitled to judgment.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY Defendant's motion for summary judgment is **GRANTED**.

DATED: September 22, 2008

_____
JOHN A. HOUSTON
United States District Judge